UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LAKIVA K. COSTLY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-00244-SDD-EWD** |
| **NISSAN MOTOR COMPANY, LTD ET AL.** | |

### ORDER AND REASONS

Before the Court is a Motion to Quash Defendants' Nissan North America and Nissan Motor Co., Ltd Subpoena Duces Tecum Directed to the Louisiana State Office of Risk Management and for Protective Order, filed by the Louisiana State Office of Risk Management ("ORM"). (R. Doc. 30). The Motion is opposed. (R. Docs. 31 and 33-2). For the following reasons, the Motion is **GRANTED in part** and **DENIED in part.**

I.  BACKGROUND

On April 4, 2014, Lakiva Costly filed a Petition for Damages against Nissan Motor Company, Ltd. And Nissan North America, Inc. (collectively "defendants"), in the 23rd Judicial District Court for the Parish of Ascension, Louisiana, for the wrongful death of her mother, Bridget A. Desselle. (R. Doc. 1-2). Costly alleges that Desselle's vehicle malfunctioned and caused a single vehicle accident that resulted in Desselle's untimely death. (R. Doc. 1-2 at 1). Costly asserts that the Louisiana Products Liability Act imposes strict liability on defendants, as the manufacturers of Desselle's vehicle, for the damages caused by the defective design and/or composition of Desselle's vehicle. (R. Doc. 1-2 at 2).

On April 23, 2014, defendant Nissan North America, Inc., removed the action to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).  (R. Doc. 1).  ORM is not a party to this action.

On September 25, 2015, ORM filed the instant Motion, requesting that the Court quash a subpoena duces tecum issued to ORM by the defendants and issue a protective order prohibiting the requested discovery under Federal Rule of Civil Procedure 26(c).  (R. Doc. 30).  ORM asserts that on or about August 5, 2015, it was served with a subpoena duces tecum on behalf of defendants, commanding ORM to produce the following:

> Certified originals or true copies of your entire file with regarding [sic] an accident on April 9, 2013 on W. I-10 in Gonzales, Louisiana involving BRIDGET A. DESSELLE, DOB: 03/28/1964 and DATE OF DEATH 04/09/2013, including, but not limited to, crash report, supplemental reports, reports prepared or received by the department, photographs, videos, witness statements, notes, toxicology reports, CDR download information, measurements, Total Station Data, accident diagram data, accident reconstruction data, computer generated information and other related documents.

(R. Doc. 30-2 at 3).  The subpoena required that the requested documents be produced by August 21, 2015.  (R. Doc. 30-2 at 1).

ORM claims that the accident reconstruction report requested in the subpoena was created by the Louisiana State Police ("LSP") at ORM's request and was created in anticipation of litigation.  As such, ORM argues the accident reconstruction report is protected from discovery under the work-product doctrine.  To support this argument, ORM submitted an affidavit from Richard LeJeune, an ORM employee who supervises the implementation of the LSP-ORM accident reconstruction program.  (*See* R. Doc. 30-3).  The affidavit states that "the purpose of the accident reconstruction program under which the accident reconstruction report . . . was performed is to preserve information regarding the accident site, the vehicles involved, and the events

2

surrounding the accident in the event that the DOTD is involved in litigation as a result of the accident." (R. Doc. 30-3). ORM asserts that when an accident occurs, the LSP sends an "incident report" to the DOTD safety section and DOTD forwards these reports to ORM. If ORM determines that the incident report indicates a defect or abnormality in the roadway, involves severe injuries or death, is highly publicized by the media, or otherwise indicates that it may lead to litigation involving DOTD, ORM orders an accident reconstruction to be performed by the LSP. Although the accident reconstruction report at issue was prepared before Costly filed her Petition for Damages, ORM asserts the report was created in anticipation of litigation because such reports are generated to evaluate potential liability should litigation occur and with the idea that litigation arising from the accident may be possible.

ORM also asserts that because the accident reconstruction report and others like it may be used as part of a roadway safety improvement program, the report at issue is non-discoverable and inadmissible at trial under 23 U.S.C. § 409. Section 409 provides:

> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

23 U.S.C. § 409. ORM claims that the accident reconstruction report at issue was performed as a result of the information contained in the LSP incident report, which was prepared pursuant to 23 U.S.C. § 148 for the purpose of identifying, evaluating, and planning safety improvement on public roads. According to ORM, if the accident reconstruction indicates a possible road defect, that

information is forwarded to the ORM loss prevention section, which notifies the DOTD safety section so that DOTD may use the information to identify and correct defects and/or abnormalities that may exist in the roadway as part of a roadway safety improvement plan.  Thus, even though the accident reconstruction report is not generated utilizing Federal-aid highway funds, ORM argues the report is part of the information and data collected and compiled by DOTD for the purpose of identifying, evaluating, and planning safety improvement on public roads that may be improved using such funds.  Thus, ORM argues the accident reconstruction report is protected from discovery and inadmissible at trial under § 409.

ORM further requests that the Court issue a protective order pursuant to Fed. R. Civ. P. 26(c), prohibiting defendants from requesting ORM's accident reconstruction report because the report is confidential under the work-product doctrine and § 409.

In Opposition, defendants assert that the accident reconstruction report is not protected under the work-product doctrine because the LSP performed its accident investigation and performed an accident reconstruction analysis in the ordinary course of business.  (R. Doc. 33-2 at 4-5).  Defendants argue that the affidavit submitted by ORM clearly shows that there is a standardized procedure whereby the LSP automatically sends a report to ORM anytime an accident occurs and that ORM personnel review the report and order the LSP to perform an accident reconstruction report if the accident "involves severe injuries or death."  (R. Doc. 30-3).  Because the underlying accident resulted in the death of Bridget Desselle, defendants assert the accident fell within the category of accidents that automatically prompts ORM personnel to contact the LSP and order an accident reconstruction investigation.  Thus, defendants argue ORM ordered the accident reconstruction report at issue as part of its ordinary course of business, rather than in the anticipation of litigation.

If the Court determines that ORM's materials constitute work-product, defendants further argue the documents are discoverable under Fed. R. Civ. P. 26(b)(3) because defendants have a substantial need for the materials and cannot otherwise obtain the information without undue hardship. Defendants assert that ORM possesses crucial, time-sensitive information regarding the underlying accident because the LSP obtained scene measurements and likely recorded the precise locations of transient physical evidence like roadway markings, debris, the path of travel of Desselle's vehicle, and signs of impact with objects, such as trees. Defendants claim that this type of information is crucial to an accurate reconstruction and analysis of the underlying accident, which is at the heart of their defenses to Costly's product liability claims.

Defendants further assert that their subpoena requests ORM's "entire file" related to the underlying accident, including underlying facts gathered during the accident investigation, and that ORM's assertion of a blanket privilege over all of its materials is improper. Even if some portion of ORM's file materials are deemed to have been created in anticipation of litigation, defendants contend that any materials that reflect underlying facts and are devoid of legal advice or strategy should be produced, including photographs, measurements, field data, notes regarding observations of damage at the scene, and similar information.

Finally, defendants claim ORM is not entitled to the protections outlined in 23 U.S.C. § 409 because it has not provided any competent evidence to support the assertion that the information it possesses was created for the purpose of identifying, evaluating, or planning the safety enhancements of public roads, as provided in the statute. Instead, ORM claims that it gathered the information for litigation purposes, which defendants contend is a position directly at odds with ORM's claim that it gathered the information for highway improvement related reasons. Defendants further assert that § 409 does not apply to ORM's materials and information because

ORM is not an agency with the purpose of developing highway safety construction projects that correct or improve hazardous road conditions, as provided in the statute. According to defendants, ORM's objective is to "develop, direct, achieve and administer a cost effective comprehensive risk management program . . . in order to preserve and protect the assets of the State of Louisiana." (R. Doc. 33-2 at 10) (*citing* 23 U.S.C. § 148(4)(A)(i)-(ii)).

## II. APPLICABLE LAW

Rule 45 of the Federal Rules of Civil Procedure governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). Rule 45 also provides that, "On a timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter . . . or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv). Subpoenas issued for discovery purposes, such as the one at issue here, are also subject to the discovery limitations outlined in Rule 26(b). *See Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 596 (E.D. Tex. 2003).

Under the work-product doctrine, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). However, such materials may be subject to discovery if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* The burden of establishing applicability of the work-product doctrine falls on the party withholding discovery. *St. James Stevedoring Co., Inc. v. Femco Machine Co.*, 173 F.R.D. 431, 432 (E.D. La. 1997).

"It is not dispositive that some documents were not prepared by attorneys. Rule 26(b)(3) protects from discovery documents prepared by a party's agent, as long as they are prepared in anticipation of litigation." *Naquin v. UNOCAL Corp.*, No. 01-3124, 2002 WL 1837838, at *7 (E.D. La. Aug. 12, 2002). "The work-product doctrine does not protect materials assembled in the ordinary course of business, pursuant to regulatory requirements, or for other non-litigation purposes." *Colony Ins. Co. v. NJC Enterprises, LLC*, No. 09-763, 2013 WL 1335737, at *2 (M.D. La. Apr. 1, 2013). Although "[w]ork product protection extends to documents and tangible things that are prepared in anticipation of litigation by a party or its representative, [the privilege] does not extend to the underlying relevant facts or to documents assembled in the ordinary course of business." *Williams v. United States Environmental Services, LLC*, No. 15-168, 2016 WL 617447, at *4 (M.D. La. Feb. 16, 2016).

"To determine whether a document is protected from disclosure by the work-product doctrine, the threshold question is whether the document was prepared in anticipation of litigation." *In re Vioxx Products Liability Litigation*, No. MDL 1657, 2007 WL 854251, at *3 (E.D. La. Mar. 6, 2007). In the Fifth Circuit, "the privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (citing *U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982)). "To determine the primary motivation for the creation of a document, courts look to a variety of factors, including, 'the retention of counsel and his involvement in the generation of the document and whether it was routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.'" *Colony Ins. Co.*, 2013 WL 1335737 at *2 (citing *Elec. Data Sys. Corp. v. Steingraber*, No. 02-225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003)).

Federal Rule of Civil Procedure 26(c) allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c) further provides that, "The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." (*Id.*). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

III.   **DISCUSSION**

    **A.  The Requested Documents are Privileged Under the Work-Product Doctrine**

In its Motion to Quash, ORM argues that the accident reconstruction report at issue constitutes work-product because the purpose of such reports is to preserve information regarding the accident site, the vehicles involved, and the events surrounding the accident in the event that DOTD is sued and such information becomes important. ORM asserts the report was created in anticipation of litigation because it was generated in order to evaluate potential liability should litigation occur and with the idea that litigation arising from the accident may be possible. In contrast, defendants argue that because the underlying accident resulted in a "serious injury or death," the incident fell within the category of accidents that automatically prompts ORM personnel to order an accident reconstruction investigation. Defendants argue the accident reconstruction report is not protected by the work-product doctrine because ORM personnel ordered the accident reconstruction as part of ORM's ordinary course of business.

"A survey of cases reveals that the severity of an accident may make anticipation of litigation reasonable." *Kansas City Southern Railway Co. v. Nichols Construction Co., L.L.C.*, No. 05-1182, 2007 WL 2127820, at *5 (E.D. La. July 25, 2007). As such, "Investigative files will be protected . . . when prepared in response to an accident so serious that a lawsuit will inevitably be filed." *Id*. (citing *Holton v. S & W Marine, Inc.*, No. 00-1427, 2000 WL 1693667, at *3 (E.D. La. Nov. 9, 2000) (holding that a statement taken from a witness by insurance claims adjuster was routine and not protected by work-product doctrine because the claim involved a non-life-threatening injury on a barge, "a fact of life for vessel owners and their crew members," and differentiating from *Hamilton v. Canal Barge Co., Inc.*, 395 F.Supp. 975 (E.D. La. 1974) (where a serious accident caused the plaintiff fatal injuries))).

Because the underlying accident resulted in the death of Bridget Desselle, the Court finds that the severity of the injury involved rendered litigation imminent. *See Transocean Deepwater, Inc. v. Ingersoll-Rand Co.*, No. 08-4448, 2010 WL 5374744, at *3 (E.D. La. Dec. 21, 2010) (concluding that "The severity of the injury—the amputation of three toes through a steel boot—rendered litigation imminent."). As such, the Court finds that ORM could reasonably anticipate that the accident would result in litigation and that "the primary motivating purpose" behind the creation of the accident reconstruction report was to aid in possible future litigation. *See In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). The affidavit submitted in support of ORM's Motion to Quash confirms this finding because it provides that, "The purpose of the accident reconstruction program . . . is to preserve information regarding the accident site, the vehicles involved, and the events surrounding the accident in the event that the DOTD is involved in litigation as a result of the accident." (R. Doc. 30-3). The affidavit further provides that, "The accident reconstruction reports provide advisory information and opinion necessary for

9

ORM decisions should litigation commence as a result of the accident to which the State may be a party." (*Id.*). Accordingly, the Court finds that the accident reconstruction report and the other investigative materials sought by defendants' subpoena were prepared by ORM in anticipation of litigation and are protected from discovery by the work-product doctrine, since litigation was reasonably anticipated as of the date of the fatal accident.

Since the documents requested by defendants are protected from discovery by the work-product doctrine, defendants can only obtain discovery of the documents by demonstrating a substantial need for the materials in the preparation of their case and that defendants are unable without undue hardship to obtain the substantial equivalent of the materials by any other means. *See* Fed. R. Civ. P. 26(b)(3). Although defendants claim ORM possesses time-sensitive information, including various measurements taken at the scene of the accident, and that they "likely have no other means of gathering the same information," the defendants have not explained why they could not have obtained the substantial equivalent of this information by hiring their own expert to conduct an accident reconstruction. As such, defendants have not met their burden of proving that the documents related to the investigation that are protected by the work-product doctrine are subject to discovery under Rule 26(b)(3).

### B. The Requested Documents Are Not Subject to Discovery Under 23 U.S.C. § 409

Regardless of whether the documents requested by defendants are protected from disclosure under the work-product doctrine, the documents are protected from discovery under 23 U.S.C. § 409. That statute provides:

> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148 of this title or for the purpose of developing any highway safety

>construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

23 U.S.C. § 409.

ORM argues that § 409 applies to the accident reconstruction report at issue because such reports result from the incident reports prepared by the LSP and submitted to DOTD in accordance with 28 U.S.C. § 148, which governs highway safety improvement programs. According to ORM, if the accident reconstruction indicates a possible road defect, that information is forwarded to the ORM loss prevention section, which notifies the DOTD safety section so that DOTD may use the information to identify and correct defects and/or abnormalities that may exist in the roadway as part of a roadway safety improvement plan. (R. Doc. 30-1 at 4). Thus, ORM asserts the accident reconstruction reports are part of the information and data collected and compiled by DOTD for the purpose of identifying, evaluating, and planning safety improvement on public roads that may be improved using Federal-aid highway funds, and therefore not subject to discovery under § 409.

Defendants assert § 409 is inapplicable in this case because ORM claims it gathered the information for litigation purposes, not for highway improvement related reasons. Defendants also claim that § 409 does not apply because ORM is not an agency whose purpose is to develop highway safety construction projects that correct or improve hazardous road conditions under 23 U.S.C. § 148. The Court, however, finds defendants' arguments unpersuasive. Nothing in § 409 prevents "reports . . . or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or . . . pursuant to sections 130, 144, and 148" from also constituting documents that are prepared in anticipation of litigation. The fact that the accident reconstruction report was prepared in

11

anticipation of litigation does not mean that it was not also prepared for purposes related to DOTD's collection and compilation of data used by DOTD as part of a roadway safety improvement plan under § 148. Since the accident reconstruction report concerns a fatal automobile accident, the Court finds that the report was prepared both in anticipation of litigation and as part of the information and data collected and compiled by DOTD for § 148 purposes.

As defendants point out, Congress enacted § 409 "to prevent the unauthorized disclosure of information that States compile in good faith to meet the purposes of Federal aid highway programs to eliminate or reduce hazardous roadway conditions." *Long v. State ex rel. Dep't of Transp. & Dev.,* 2004-0485, p. 10 (La. 6/29/05), 916 So.2d 87, 94 (citation omitted). When determining whether a document is privileged under § 409, "the purpose of the document, no matter in whose possession, must relate to purposes as defined in 23 U.S.C. §§ 130, 144 or 152."[1] *Long*, 2004-0485 at 20, 916 So.2d at 100 (citing *Pierce County v. Guillen*, 537 U.S. 129, 146, 123 S.Ct. 720, 154 L.Ed.2d 610 (2003)). Thus, defendants' argument that § 409 does not apply because ORM is not an agency whose purpose is to develop highway safety construction projects to correct or improve hazardous road conditions lacks merit. Pursuant to *Long*, the purpose of the document, rather than the agency that created or currently possesses it, determines whether the document is shielded from discovery under § 409. As explained by the Supreme Court in *Guillen*, "§ 409 protects not just the information an agency generates, i.e., compiles, for § 152 purposes, but also *any information that an agency collects from other sources for § 152 purposes*." 537 U.S. at 145, 123 S.Ct. at 730 (emphasis added). Based on the foregoing, the Court finds that the accident

---

[1] When the court issued its opinion in *Long*, § 409 referred to "reports. . . or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title . . . ." *Long*, 2004-0485 at 11, 916 So.2d at 95. In 2005, Congress amended § 409 by replacing "§ 152" with "§ 148." *See* SAFE, ACCOUNTABLE, FLEXIBLE, EFFICIENT TRANSPORTATION EQUITY ACT: A LEGACY FOR USERS OR "SAFETEA–LU", PL 109–59, August 10, 2005, 119 Stat 1144.

reconstruction report at issue and the related investigatory documents are protected from discovery under § 409.

### C. ORM Is Not Entitled to a Protective Order Under Fed. R. Civ. P. 26(c)

Federal Rule of Civil Procedure 26(c) requires a party moving for a protective order to "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). "Thus, the moving party's filing of a Good Faith Certificate, in proper form, is a mandatory prerequisite to the court's consideration of a motion for protective order." *Williams v. Weems Cmty. Mental Health Ctr.,* No. 4:04CV179LR, 2006 WL 905955, at *1 (S.D. Miss. Apr. 7, 2006). Because there is no Certificate of Good Faith attached to ORM's Motion for Protective Order, as required by Rule 26(c), the Motion is denied to the extent that it seeks a protective order.

Further, since the Court is granting ORM's Motion to Quash the defendants' subpoena, the Court finds that ORM has not shown "good cause" to justify the issuance of a protective order. *See In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

### IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the Motion to Quash Defendants' Nissan North America and Nissan Motor Co., Ltd Subpoena Duces Tecum Directed to the Louisiana State Office of Risk Management and for Protective Order, filed by the Louisiana State Office of Risk Management (R. Doc. 30) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** as it relates to the subpoena issued to ORM, which is quashed. With respect to ORM's request for a protective

order, the Motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on June 21, 2016.

*Erin Wilder-Doomes*

_____
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**